**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and STATE FARM FIRE AND CASUALTY COMPANY, <br><br> Plaintiffs, <br><br> v. <br><br> DELAWARE DIAGNOSTIC & REHABILITATION CENTER, P.A.; CONRAD K. KING, JR., M.D., P.A.; DAMON D. CARY, D.O., P.A.; WILLIAM R. ATKINS, JR., M.D., LLC; CONRAD K. KING, JR.; DAMON D. CARY; and WILLIAM R. ATKINS, JR., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No. 18-1806-MN-SRF |

## REPORT AND RECOMMENDATION

### I.  INTRODUCTION

Presently before the court in this civil action for insurance fraud are the following

motions: (1) the motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and/or

12(h)(3), filed by defendants Delaware Diagnostic & Rehabilitation Center, P.A. ("DDRC") and

William R. Atkins, Jr., M.D. ("Dr. Atkins") (D.I. 112);[1] (2) the motion to dismiss pursuant to

Federal Rules of Civil Procedure 12(b)(6) and/or 12(h)(3), filed by defendants Conrad K. King,

Jr., M.D. ("Dr. King"), Damon D. Cary, D.O. ("Dr. Cary"), Conrad K. King, Jr., M.D., P.A. (the

---

[1] The briefing associated with DDRC and Dr. Atkins' pending motion to dismiss pursuant to Rule 12(b)(6) and/or Rule 12(h)(3) is found at D.I. 112, D.I. 119, and D.I. 123.

"King Practice"), and Damon D. Cary, D.O., P.A. (the "Cary Practice")[2] (D.I. 113);[3] and (3) the motion to dismiss the second amended counterclaims of Dr. King, Dr. Cary, the King Practice, and the Cary Practice (collectively, "Counterclaim Plaintiffs") for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (together, "State Farm") (D.I. 100).[4] For the following reasons, I recommend that the court: (1) DENY the motion to dismiss filed by DDRC and Dr. Atkins; (2) DENY the motion to dismiss filed by Dr. King, Dr. Cary, the King Practice, and the Cary Practice; and (3) GRANT State Farm's motion to dismiss.

## II.    BACKGROUND

State Farm initiated this action on November 15, 2018, asserting causes of action for common law fraud and civil conspiracy against all Defendants, and asserting causes of action for unjust enrichment and declaratory relief pursuant to 28 U.S.C. § 2201 against the Clinics. (D.I. 1)  In January 2019, Defendants moved to dismiss the original complaint for failure to state a claim. (D.I. 17; D.I. 19; D.I. 21)  State Farm responded by filing an amended complaint in March 2019.  (D.I. 25)  The amended complaint alleges that Defendants participated in a scheme to profit from patients' no-fault insurance benefits by delivering unnecessary medical services

---

[2] DDRC, the King Practice, and the Cary Practice are collectively referred to herein as "the Clinics," consistent with the operative complaint. (D.I. 25 at ¶ 25)  Dr. King, Dr. Cary, and Dr. Atkins are collectively referred to herein as "the Doctors," consistent with the operative complaint. (D.I. 25 at ¶ 21)  Dr. King, the King Practice, Dr. Cary, the Cary Practice, DDRC, and Dr. Atkins are collectively referred to herein as "Defendants."
[3] The briefing associated with the motion to dismiss filed by Dr. King, Dr. Cary, the King Practice, and the Cary Practice pursuant to Rule 12(b)(6) and/or Rule 12(h)(3) is found at D.I. 113, D.I. 120, and D.I. 124.
[4] The briefing associated with the pending motion to dismiss the second amended counterclaims is found at D.I. 101, D.I. 104, and D.I. 105.

and prescribing opioid medications to patients based on a "predetermined treatment plan" for minor injuries following automobile accidents. (*Id.* at ¶¶ 1-9)

In April 2019, Defendants filed motions to dismiss the amended complaint for failure to state a claim, as well as a motion to strike the amended complaint. (D.I. 27; D.I. 29; D.I. 30; D.I. 31; D.I. 32; D.I. 35) On October 24, 2019, the court issued an order denying the motion to strike. (D.I. 46)

While the motions to dismiss remained pending, Dr. Cary and the Cary Practice filed a motion to stay the litigation pending the outcome of Dr. Cary's administrative hearing before the Delaware Board of Medical Licensure and Discipline. (D.I. 48) The court granted the motion to stay on January 8, 2020, staying all proceedings before the court until resolution of the administrative proceeding. (D.I. 52) The stay was lifted in June 2020, and a hearing on the motions to dismiss was set for July 30, 2020. (D.I. 63; D.I. 64) The court denied Defendants' motions to dismiss on the record during the July 30, 2020 hearing.[5] (7/30/2020 Minute Entry)

Following the denial of the motions to dismiss, Defendants filed their answers to the amended complaint and crossclaims. (D.I. 69; D.I. 70) Dr. King, Dr. Cary, the King Practice, and the Cary Practice also asserted counterclaims against State Farm for declaratory relief pursuant to 28 U.S.C. § 2201, violations of 42 U.S.C. § 1981, and intentional interference with

---

[5] During the July 30, 2020 oral argument, the court offered the following explanation in concluding that an actual controversy exists and was sufficiently pleaded:

> Plaintiff has alleged that the Defendants engaged in a fraudulent conspiracy by providing unnecessary medications and procedures pursuant to a protocol not based on an individual patient's needs. As I understand it, Plaintiff is not seeking a generic declaration that it need not pay all bills going forward, but rather alleging that if the State Farm Entities prevail, then they may seek a declaratory ruling that they are not obligated to pay any unpaid bills that were not medically necessary as the product of the Defendants' fraudulent scheme.

(7/30/2020 Tr. at 39:1-12)

existing and prospective contractual relations. (D.I. 70 at 33-37) Before State Farm responded to Defendants' answers, affirmative defenses, and counterclaims, Defendants amended their pleadings on October 7, 2020. (D.I. 87; D.I. 88) The following day, State Farm moved to dismiss the counterclaims of Dr. King, Dr. Cary, the King Practice, and the Cary Practice for failure to state a claim under Rule 12(b)(6). (D.I. 90) On October 16, 2020, Dr. King, Dr. Cary, the King Practice, and the Cary Practice submitted an amended answer and counterclaims, rendering moot State Farm's motion to dismiss the counterclaims. (D.I. 93; D.I. 95) State Farm moved to dismiss the second amended counterclaims on October 30, 2020, and the motion is now ripe for resolution by the court. (D.I. 100)

In January 2021, Defendants again moved to dismiss State Farm's amended complaint for failure to state a claim. (D.I. 112; D.I. 113) Defendants' motions to dismiss also allege that the court lacks subject matter jurisdiction under Rule 12(h)(3). (*Id.*) Defendants' motions to dismiss are also ripe for resolution by the court.[6]

## III.    LEGAL STANDARDS

### A.  Rule 12(b)(6)

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790-91 (3d Cir. 2016). "Courts use the same standard in ruling on a motion to dismiss a counterclaim under Rule 12(b)(6) as they do in assessing a claim in a complaint." *Goddard Sys.,*

---

[6] On February 11, 2021, this case was referred to the undersigned judicial officer to resolve all pending motions and to hear and resolve all pre-trial matters up to and including expert discovery matters. (D.I. 117)

*Inc. v. Gondal*, C.A. No. 17-1003-CJB, 2018 WL 1513018, at *4 (D. Del. Mar. 27, 2018).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

### B. Rules 12(b)(1) and 12(h)(3)

"If the court determines . . . it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Motions brought under Rule 12(b)(1) for lack of subject matter jurisdiction may present either a facial or factual challenge to the court's jurisdiction. *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (citations omitted). A

challenge is facial when a motion to dismiss is filed prior to an answer and thereby asserts that

the complaint, on its face, is jurisdictionally deficient. *Cardio-Med. Assocs., Ltd. v. Crozer-*

*Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983). In reviewing a facial challenge under Rule

12(b)(1), the standards relevant to Rule 12(b)(6) apply, and "the court must only consider the

allegations of the complaint and documents referenced therein and attached thereto, in the light

most favorable to the plaintiff." *See Lincoln*, 800 F.3d at 105 (internal quotation marks and

citations omitted). The plaintiff bears the burden of establishing the existence of subject matter

jurisdiction. *Id.* (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)).

## IV.    DISCUSSION

### A.    Defendants' Motions to Dismiss the Amended Complaint

#### 1.    Waiver under Rule 12(g)(2)

Defendants waived their Rule 12(b)(6) arguments by failing to assert those arguments in

the previous round of Rule 12(b)(6) motion practice regarding the amended complaint.[7] *See*

*Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 320-21 (3d Cir. 2015) (finding error in district

court's consideration of second motion to dismiss because "[t]he procedural bar of Rule 12(g)(2)

. . . covers all motions to dismiss for failure to state a claim, regardless of the grounds asserted.").

Rule 12(g)(2) states that "a party that makes a motion under this rule must not make another

motion under this rule raising a defense or objection that was available to the party but omitted

from its earlier motion." Fed. R. Civ. P. 12(g)(2). In this case, Defendants previously moved to

dismiss the amended complaint for failure to state a claim under Rule 12(b)(6). (D.I. 27; D.I. 32)

---

[7] Although the arguments addressing waiver under Rule 12(g)(2) were substantively addressed only in the briefing of DDRC and Dr. Atkins, (D.I. 123 at 1-3), these arguments were incorporated by reference into the briefing of Dr. Cary, Dr. King, the Cary Practice, and the King Practice, (D.I. 124 at 1 n.1). Therefore, the court's analysis applies collectively to all Defendants.

Defendants contend that their Rule 12(b)(6) argument regarding State Farm's failure to file an Affidavit of Merit under 18 *Del. C.* § 6853 was not previously available to them because the deficiency was not confirmed until July 29, 2020. (D.I. 123 at 2)  But § 6853 provides that the Affidavit of Merit must accompany the complaint. 18 *Del. C.* § 6853 ("No health-care negligence lawsuit shall be filed in this State unless the complaint is accompanied by" an Affidavit of Merit.).  The amended complaint was filed on March 4, 2019. (D.I. 25)  To the extent that the pleading was not accompanied by an Affidavit of Merit, the alleged deficiency existed as of the filing date of State Farm's amended complaint.

Although the Affidavit of Merit is not served on Defendants,[8] § 6853(d) provides a mechanism by which Defendants may test the existence and sufficiency of the Affidavit of Merit. *See* 18 *Del. C.* § 6853(d) ("Upon motion by the defendant the court shall determine in camera if the affidavit of merit complies with paragraph (a)(1).").  There is no indication on the present record that Defendants sought relief pursuant to § 6853(d) after the amended complaint was filed.  Accordingly, Defendants' discovery of the alleged deficiency in July 2020 does not support their position that the defense was not previously available to them. *See Freed v. St. Jude Med., Inc.*, C.A. No. 17-1128-CJB, 2019 WL 5102643, at *2 (D. Del. Oct. 11, 2019) (denying second motion to dismiss because the defendant "should not be allowed to raise these previously-available arguments in a subsequent Rule 12(b)(6) motion.").

Defendants ask the court to adopt the Third Circuit's conclusion of harmless error in *Leyse* and issue a substantive ruling on their motions to dismiss in the interest of judicial efficiency.  (D.I. 123 at 2)  In accordance with Rule 12(h)(2), Defendants may challenge the

---

[8] Section 6853(a)(1) provides that the Affidavit of Merit "shall be filed with the court in a sealed envelope," it "shall remain sealed and confidential," and it "shall not be a public record." 18 *Del. C.* § 6853(a)(1).

amended complaint "(A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial." Fed. R. Civ. P. 12(h)(2). Because the pending Rule 12(b)(6) motions are substantively identical to the arguments that would be presented in a Rule 12(c) motion, Defendants contend that a subsequent Rule 12(c) motion would "serve little purpose here." (D.I. 123 at 2)

The court is obligated to enforce Rule 12(g)(2), and failure to do so is error. In *Leyse*, the Third Circuit "emphasize[d] that district courts should enforce Rule 12(g)(2) even if their failure to do so is not ground for reversal." *Leyse*, 804 F.3d at 322 n.5 (observing that, "[a]lthough some courts and commentators believe that allowing successive pre-answer motions to dismiss avoids delay, this seems to us like short-term thinking."). Consistent with other courts in this district, "[t]he Court does not want to commit error, nor does it want to disregard the Third Circuit's guidance, even for the sake of expediency." *Sunoco Partners Mktg. & Terminals L.P. v. Powder Springs Logistics, LLC*, C.A. No. 17-1390-LPS-CJB, 2019 WL 8641303, at *3 (D. Del. Aug. 7, 2019), *report and recommendation adopted*, 2020 WL 1527321 (D. Del. Mar. 31, 2020). Accordingly, I recommend that the court deny Defendants' motions to dismiss for failure to state a claim on the basis of waiver under Rule 12(g)(2).

### 2. Subject matter jurisdiction under Rules 12(b)(1) and 12(h)(3)

Defendants also contend that this action should be dismissed pursuant to Rule 12(b)(1) and Rule 12(h)(3) as a result of State Farm's failure to comply with the Delaware Medical Malpractice Act, 18 *Del. C.* § 6801 et seq. ("Malpractice Act") by not submitting an Affidavit of Merit with the amended complaint. (D.I. 112 at 8) According to Defendants, the Malpractice Act applies to this fraud action because the statute defines "medical negligence" broadly to include "any tort or breach of contract based on health care or professional services rendered, or

which should have been rendered, by a health-care provider to a patient." (D.I. 123 at 3-4) (citing 18 *Del. C.* § 6801(7)). Defendants argue that State Farm's alleged failure to comply with the Malpractice Act deprives this court of subject matter jurisdiction because § 6853 requires the clerk of court to refuse to file a complaint that is not accompanied by an Affidavit of Merit. (D.I. 112 at 8-9)

In response, State Farm alleges that the Malpractice Act does not apply to the claims in this case, and even if the court disagrees, any failure to comply with pre-suit or threshold requirements does not deprive the court of its diversity jurisdiction under 28 U.S.C. § 1332. (D.I. 119 at 5-14)

I recommend that the court deny Defendants' motion to dismiss under Rule 12(b)(1) and Rule 12(h)(3). A plaintiff's failure to comply with a prefiling requirement, such as the submission of an Affidavit of Merit, is typically addressed under the Rule 12(b)(6) framework. *See Vitale v. Carrier Clinic, Inc.*, 409 F. App'x 532, 534-35 (3d Cir. 2010) (evaluating a trial court's ruling on a Rule 12(b)(6) motion to dismiss for failure to comply with a state Affidavit of Merit statute); *Mullins v. Suburban Hosp. Healthcare Sys., Inc.*, 2017 WL 480755, at *2 (D. Md. Feb. 6, 2017) (declining to consider defendants' motion under Rule 12(b)(1) because conditions precedent to the filing of a medical malpractice suit were substantive elements that did not constitute a jurisdictional bar); *Webster v. Simmonds*, 2005 WL 14886, at *2 (D. Md. Jan. 3, 2005) ("A prefiling requirement is most appropriately analyzed under Rule 12(b)(6) and treated as a substantive element of state law . . . rather than as a lack of subject matter jurisdiction under Rule 12(b)(1)."). Defendants cite no case authorities supporting their position that the failure to comply with the Affidavit of Merit requirement of § 6853 deprives the court of jurisdiction.[9]

---

[9] The two cases cited by Defendants are inapposite. In *Klein v. City of Norwalk*, the District of Connecticut concluded that the plaintiff failed to comply with the notice provisions set forth in

(D.I. 112 at 8-9)  Consequently, the appropriate mechanism to evaluate compliance with § 6853 is a Rule 12(b)(6) motion.  For the reasons set forth at § IV.A.1, Defendants' Rule 12(b)(6) arguments are waived.  Because I recommend denial of Defendants' motions to dismiss on the foregoing procedural grounds, the court need not reach the issue of whether State Farm's amended complaint falls under the Malpractice Act.

### B.  State Farm's Motion to Dismiss the Second Amended Counterclaims

State Farm moves to dismiss the second amended counterclaims filed by Dr. King, Dr. Cary, the King Practice, and the Cary Practice (collectively, the "Counterclaim Plaintiffs") for declaratory relief, violations of 42 U.S.C. § 1981, and violations of 21 *Del. C.* § 2118.  (D.I. 100) The counterclaims accuse State Farm of avoiding payment of insurance claims in contravention of its contractual and statutory obligations by manipulating statistical patterns across doctors' treatment records to manufacture accusations of fraudulent billing practices.  (D.I. 93 at ¶¶ 2, 6-10)  According to Counterclaim Plaintiffs, State Farm's accusations of fraud are racially motivated, targeting minority practitioners and/or practitioners who primarily treat minority patients.  (*Id.* at ¶¶ 11-13, 114)

I recommend that the court grant State Farm's motion to dismiss Counterclaim Plaintiffs' counterclaims, which are admittedly based on the allegations made in State Farm's amended complaint.  (*See, e.g.*, D.I. 104 at 1-3)  Counterclaim Plaintiffs describe at length State Farm's

---

the state's defective highway statute.  499 F. Supp. 2d 113, 116-17 (D. Conn. 2007).  In *Diaz v. United States*, the court determined that the plaintiffs' claim under the Federal Torts Claim Act was time-barred under the statute of limitations.  2006 WL 2387093, at *1 (D. Puerto Rico Aug. 17, 2006).  The purpose of the Affidavit of Merit requirement is to verify the merits of a medical negligence claim and discourage the filing of frivolous claims.  18 *Del. C.* § 6853(a)(1); *see also Dishmon v. Fucci*, 32 A.3d 338, 342 (Del. 2011).  Defendants do not explain how cases addressing notice provisions and statute of limitations issues are analogous.

alleged admissions in the amended complaint that it denied Counterclaim Plaintiffs' bills due to

discrepancies between the records of Counterclaim Plaintiffs and the records of other doctors:

- "The Counterclaim alleges, and <u>State Farm admits</u>, that the entire and singular basis upon which it has denied and will continue to deny every one of these bills is an alleged 'predetermined treatment protocol' supposedly identified by comparing Counterclaim Plaintiffs' records '<u>to the records of other doctors</u>.'" (D.I. 104 at 1-2)

- "The whole foundation of State Farms' [*sic*] denials is that the patterns across Counterclaim Plaintiffs' prior records are *so different* from 'the records of other doctors' that the patterns alone demonstrate the treatment in each denied bill to have been inappropriate." (D.I. 104 at 2)

- "State Farm admits that it is and had denied Counterclaim Plaintiffs' bills because the patterns in their records are <u>so different</u> from what would be seen in a 'credible' practice that the <u>aberration alone</u> justifies State Farms' [*sic*] denial of each bill submitted since November 15, 2018, as a 'continuation' of the pattern." (D.I. 104 at 2)

- "Counterclaim Plaintiffs seek a Declaratory Judgment that the patterns exhibited in their record [*sic*] are in fact not anomalies when compared to the records of other similarly situated doctors which State Farm admits it has already analyzed." (D.I. 104 at 2-3)

- "State Farm avers the only way it as able to 'discover' the fraud it alleges in each bill of the Defendants was by comparing the collective patterns exhibited by their records 'to the records of other doctors.'" (D.I. 104 at 4)

- "This whole litigation is founded upon the singular notion that patterns in the Counterclaim Plaintiffs' records are such anomalies when compared to the patterns exhibited by 'other doctors' State Farm has analyzed as to alone demonstrate fraud in every individual chart." (D.I. 104 at 5)

- "Counterclaim Plaintiffs allege that State Farm has run the same statistical analyses upon which it bases its denials on the records of other doctors in Delaware who regularly submit billing to it for the treatment of State Farm insureds injured in auto accidents. Critically, State Farm itself has admitted this averment is true. It specifically alleges in that it was only able to identify the patterns in Counterclaim Plaintiffs' records as 'non-credible' by comparing them to the patterns reflected in 'the records of other doctors.'" (D.I. 104 at 9)

Counterclaim Plaintiffs' pervasive arguments to this effect are based on a facially inaccurate reading and misquotation of State Farm's amended complaint.[10] *See State Farm Mut. Auto. Ins. Co. v. Peter J. Hanson, P.C.*, 2017 WL 3189026, at *2 (W.D. Wash. July 27, 2017) (stating that "the Court need not accept allegations that are merely conclusory, unwarranted deductions of facts, or unreasonable inferences" in denying motion to amend counterclaims alleging that "the insurers fabricated a pattern of insurance fraud solely to avoid the expense of covering" insurance claims). The amended complaint states that "bills were reviewed in detail, reviewed collectively across the patient population, and compared to the records of other Doctors," with the term "Doctors" expressly defined in the pleading to include only Dr. King, Dr. Cary, and Dr. Atkins. (D.I. 25 at ¶¶ 21, 119) In fact, the amended complaint specifies that State Farm "compar[ed] the medical records and bills of the Doctors with: (1) one another; (2) between multiple patients; and (3) between the Clinics" to detect the wrongful conduct. (D.I. 25 at ¶ 127) The universe of comparisons pleaded by State Farm was limited to the records of Drs. Atkins, Cary, and King and their respective Clinics. Based on this limited universe of records, State Farm alleges that "[i]t is not credible that the patients insured by the State Farm Plaintiffs who sought treatment at three different Clinics, with four different treating providers, over a three year period would have required remarkably similar treatment, including potentially addictive opioids and passive physical therapy." (*Id.* at ¶ 109)

Nowhere does the amended complaint suggest that State Farm compared Counterclaim Plaintiffs' records "to the records of other doctors" generally. Nor does the amended complaint

---

[10] Counterclaim Plaintiffs describe State Farm's arguments as "ridiculous," "go[ing] from the ridiculous to the sublime," and "outlandish," and they accuse State Farm of having "mysterious myopia." (D.I. 104 at 1, 3 n.1, 4) As a rule, rhetoric of this nature is unhelpful and unpersuasive. *See Davis v. 24 Hour Fitness Worldwide, Inc.*, 75 F. Supp. 3d 635, 639 n.1 (D. Del. 2014). It is even less compelling where, as here, the derogatory language is based on a misrepresentation of State Farm's pleading and arguments.

refer to "anomalies" or "aberrations" between Counterclaim Plaintiffs' treatment records and the records of other doctors generally. Counterclaim Plaintiffs' reference to State Farm's supposed admissions regarding comparisons and discrepancies among the records of other doctors generally is not supported by the allegations in the amended complaint.

Counterclaim Plaintiffs' pleading contains conclusory allegations regarding State Farm's comparisons of their records to statistical patterns among the records of "all other pain management doctors in Delaware which State Farm has analyzed." (D.I. 93 at ¶¶ 6-9) The counterclaims do not identify any of the "other doctors" or describe in a non-speculative manner what the records of other doctors reveal. Counterclaim Plaintiffs' answering brief suggests that the factual underpinning for its pleading is derived from the allegations in State Farm's amended complaint.[11] To the extent that Counterclaim Plaintiffs' pleading relies on a misreading of State Farm's amended complaint to state a claim, the allegations are not plausible. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (requiring pleadings to set forth sufficient factual matter, accepted as true, to state a facially plausible claim to relief). Therefore, I recommend that the court grant State Farm's motion to dismiss.[12] Because Counterclaim Plaintiffs have failed to sufficiently cure many of the defects

---

[11] Counterclaim Plaintiffs' ten-page answering brief dedicates between six to seven pages discussing the allegations in State Farm's amended complaint in relation to their counterclaims. (D.I. 104 at 1-5, 8-9)

[12] State Farm argues that the absolute litigation privilege bars the asserted counterclaims. (D.I. 101 at 5) The common law rule of absolute privilege "protects from actions for defamation statements of judges, parties, witnesses and attorneys offered in the course of judicial proceedings so long as the party claiming the privilege shows that the statements issued as part of a judicial proceeding and were relevant to the matter at issue in the case." *Barker v. Huang*, 610 A.2d 1341, 1345 (Del. 1992). Although the absolute litigation privilege is not limited to defamation claims, claims subject to the absolute privilege generally bear some relation to defamation claims or involve issues of disparagement. *See Barker*, 610 A.2d at 1349; *AGC Networks, Inc. v. Relevante, Inc.*, C.A. No. 14-308-LPS, 2015 WL 1517419, at *3 (D. Del. Mar. 31, 2015) (applying absolute litigation privilege to dismiss tortious interference claim). Here, State Farm has not shown how the asserted statutory and civil rights counterclaims are analogous

identified in State Farm's previous motion to dismiss despite their amendment, I recommend that the court dismiss the counterclaims with prejudice. (D.I. 91); *see McCoy v. Favata*, C.A. No. 17-1046-MN, 2020 WL 1929040, at *19 (D. Del. Apr. 21, 2020) (dismissing portions of the amended complaint with prejudice because the plaintiff "ha[d] been given an opportunity to cure the substantive issues pointed out here, and has failed to do so.").

Even if the court were to reject the foregoing analysis, the counterclaims should be dismissed as to Dr. King and the King Practice for failure to allege an injury associated with them. The pleading alleges that Dr. King retired on December 31, 2017. (D.I. 93 at ¶ 112) But the injury articulated by Counterclaim Plaintiffs is State Farm's failure to pay medical bills submitted to State Farm on or after November 15, 2018. (*Id.* at ¶¶ 121-25, 133, 161-62, 166) Counterclaim Plaintiffs offered no argument to rebut State Farm's position on this point, thereby waiving the issue. *See vMedex, Inc. v. TDS Operating, Inc.*, C.A. No. 18-1662-MN, 2020 WL 4925512, at *7 (D. Del. Aug. 21, 2020) (citing *Blakeman v. Freedom Rides, Inc.*, C.A. No. 12-416-LPS-CJB, 2013 WL 3503165, at *13 (D. Del. July 10, 2013) ("In such situations, where a party responds to a dispositive motion, but only attempts to defend some subset of the claims that are subject to the motion, courts have consistently held that the claims that are not defended are deemed abandoned.")). Moreover, each of the three asserted counterclaims is separately deficient for the alternative reasons set forth below.

### 1. Counterclaim for declaratory judgment

The Declaratory Judgment Act provides that "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration,

---

to defamation claims for purposes of applying the absolute litigation privilege. Nonetheless, I recommend that the court grant State Farm's motion to dismiss for the other reasons discussed herein.

whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Federal courts possess "unique and substantial discretion in deciding whether to declare the rights of litigants," even when a justiciable controversy exists. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995); *Del. State Univ. Student Hous. Found. v. Ambling Mgmt. Co.*, 556 F. Supp. 2d 367, 373-74 (D. Del. 2008); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007). To determine whether declaratory relief should be granted, the court "must ask whether the requested declaratory judgment will (1) clarify and settle legal relations in issue and (2) terminate and afford greater relief from the uncertainty, insecurity, and controversy giving rise to the present action." *Del. State Univ.*, 556 F. Supp. 2d at 374 (quoting *Gruntal & Co., Inc. v. Steinberg*, 837 F. Supp. 85, 89 (D.N.J. 1993)). The purpose of declaratory relief is to affect the present behavior of the defendant towards the plaintiff, and it is inappropriate solely to adjudicate past conduct. *Corliss v. O'Brien*, 200 F. App'x 80, 84-85 (3d Cir. 2006).

I recommend that the court grant State Farm's motion to dismiss the counterclaim for declaratory relief. "Courts generally decline granting declaratory relief when the claim for declaratory judgment is entirely duplicative of another claim in the cause of action." *Butta v. GEICO Cas. Co.*, 400 F. Supp. 3d 225, 233 (E.D. Pa. 2019) (dismissing the plaintiff's claim for declaratory relief that was "nearly identical" to his breach of contract claim). The first declaration Counterclaim Plaintiffs seek is a declaration that "the statistical patterns exhibited by Counterclaim Plaintiffs' treatment records are substantially similar to the statistical patterns exhibited by the records of Caucasian pain management doctors in Wilmington upon which State Farm has performed identical analytic analysis." (D.I. 93 at ¶ 133) This request for declaratory relief is redundant of Counterclaim Plaintiffs' civil rights counterclaim under 42 U.S.C. § 1981, which alleges that "State Farm targeted Counterclaims [sic] Plaintiffs with a knowingly false

accusation of 'non-individualized' treatment based on statistical analyses which apply equally to Caucasian doctors of the same specialty in Wilmington upon whose records state Farm has performed the identical statistical analysis." (D.I. 93 at ¶ 159)  Because Counterclaim Plaintiffs' first requested declaration captures the same averments of the civil rights counterclaim under 42 U.S.C. § 1981, dismissal of the counterclaim for declaratory relief is warranted.  *See Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 504 (D.N.J. 2009) (dismissing declaratory judgment claim where the declaration sought would be duplicative of a favorable finding on the consumer fraud act claims).

The same is true of Counterclaim Plaintiffs' second request for a declaration that "State Farm's denials of Counterclaim Plaintiffs' pending bills based on statistical similarity to past records of unrelated patients violates 21 *Del. C.* § 2118." (D.I. 93 at ¶ 133)  This request for declaratory relief is coextensive with Counterclaim Plaintiffs' counterclaim alleging a violation of 21 *Del. C.* § 2118.  (D.I. 93 at ¶¶ 165-69)  Accordingly, I recommend dismissal of Counterclaim Plaintiffs' request for declaratory relief regarding violations of 21 *Del. C.* § 2118. *See Butta*, 400 F. Supp. 3d at 233-34; *Maniscalco*, 627 F. Supp. 2d at 504.

Counterclaim Plaintiffs also seek a declaratory judgment awarding attorney's fees and costs.  (D.I. 93 at ¶ 133) ("granting such other and further relief this Court deems just and proper, including attorney's fees and costs.").  These damages are not specifically tied to a particular cause of action in the counterclaims, and Counterclaim Plaintiffs have not articulated a basis to declare an award of attorney's fees separate and apart from the counterclaims under § 1981 and § 2118, which are otherwise deficient for the reasons explained in more detail at § IV.B.2-3, *infra*.

## 2. Section 1981 counterclaim

Section 1981 of the Civil Rights Act prohibits discrimination on the basis of race and secures the protection of certain civil rights, including the right to make and enforce contracts. *Kornegey v. City of Phila.*, 299 F. Supp. 3d 675, 684–85 (E.D. Pa. 2018). To state a claim under 42 U.S.C. § 1981, a plaintiff must allege (1) membership in a racial minority; (2) the defendant's intent to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in § 1981. *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001). "The discriminatory intent necessary for a valid section 1981 claim can manifest in disparate impact, departure from procedural norms, a history of discriminatory conduct, or other relevant facts, but may not be established by conclusory allegations of generalized racial bias." *Kornegey*, 299 F. Supp. 3d at 685 (quoting *Bailey v. Harleysville Nat'l Bank & Trust Co.*, 2005 WL 2012024, at *5 (E.D. Pa. 2005)). To prevail on a § 1981 claim, "a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

Only the Cary Practice is at issue with respect to Counterclaim Plaintiffs' § 1981 claim. For the reasons set forth at § IV.B, *supra*, Counterclaim Plaintiffs' pleading fails to allege any injury against Dr. King or the King Practice. Moreover, the assignments are between the patient and the Cary Practice. (D.I. 93 at ¶ 22; D.I. 104, Ex. A) Because no assignments were made to Dr. Cary individually,[13] there can be no cause of action asserted by Dr. Cary in his individual

---

[13] In connection with its previous motion to dismiss the counterclaims, State Farm submitted a request for judicial notice which attached as exhibits various orders and consent agreements issued by the Delaware Board of Medical Licensure and Discipline and/or the Delaware Secretary of State (the "Suspension Documents"). (D.I. 89) State Farm asserts that the court may take judicial notice of the Suspension Documents because they are matters of public record. (*Id.* at 4) Counterclaim Plaintiffs object to State Farm's request for judicial notice on relevance

capacity under § 1981. *See Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 477 (2006) ("[I]t is fundamental corporation and agency law . . . that the shareholder and contracting officer of a corporation has no rights and is exposed to no liability under the corporation's contracts."). Based upon the sample assignment attached to Counterclaim Plaintiffs' answering brief, the assignment does not confer any greater contractual rights on the Cary Practice beyond the right to receive payment directly from the insurer subject to the policy coverage.[14] (D.I. 93 at ¶¶ 22-25, 160; D.I. 104, Ex. A)

Even assuming the assignments may form the basis for the Cary Practice's contractual standing relevant to a § 1981 claim, the claim fails for lack of facially plausible allegations for the reasons set forth at § IV.B, *supra*. In addition, the § 1981 counterclaim does not plausibly allege that race was a but-for cause of Counterclaim Plaintiffs' injuries. *See Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1014-15 (2020) (noting that, "while the materials the plaintiff can rely on to show causation may change as a lawsuit progresses from filing to judgment, the burden itself remains constant."). Here, the pleading generally accuses State Farm of targeting doctors treating minority, low-income patients in metropolitan areas.

_____

grounds, arguing that the court should not take judicial notice of the Suspension Documents, which were based on different allegations and facts. (D.I. 98 at 1-2) In particular, Counterclaim Plaintiffs represent that "not a single one of the few patients at issue in the Board Proceedings involved a State Farm insured or State Farm claim. . . ." (*Id.* at 3) On a motion to dismiss, a court "may take judicial notice of another [tribunal's] opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd.*, 181 F.3d 410, 427 (3d Cir. 1999); *see also Yeransian v. Markel Corp.*, C.A. No. 20-672-MN, 2021 WL 979604, at *2 n.4 (D. Del. Mar. 16, 2021). Consequently, the court takes judicial notice only of the existence of the Suspension Documents.

[14] Despite referencing a sample assignment agreement between Counterclaim Plaintiffs and a patient, no assignment was attached to the pleading. (D.I. 93 at ¶ 22) Instead, Counterclaim Plaintiffs attach the sample assignment to their answering brief, redacting the name of the patient's insurance company, the claim number, and all identifying information about the patient. (D.I. 104, Ex. A)

(D.I. 93 at ¶¶ 5, 11) Counterclaim Plaintiffs accuse State Farm of performing the same statistical analysis on the records of Caucasian doctors whose claims were not denied, without identifying a single Caucasian provider who was similarly situated. (D.I. 93 at ¶¶ 115-20, 129, 159) A "naked assertion" that the claims of similarly situated Caucasian doctors were not denied, "devoid of further factual enhancement," does not satisfy the Rule 8 pleading standard on a motion to dismiss. *Gross v. R.T. Reynolds, Inc.*, 487 F. App'x 711, 719 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557). Consequently, I recommend that the court grant State Farm's motion to dismiss Counterclaim Plaintiffs' § 1981 counterclaim.

### 3. Section 2118 counterclaim[15]

Delaware's Personal Injury Protection ("PIP") statute governs the processing and payment of automobile insurance benefits. *See* 21 *Del. C.* § 2118. "An insured is allowed to seek reimbursement for 'reasonable and necessary' expenses under 2118(a)(2) by making a written request for payment." *Green v. GEICO Gen. Ins. Co.*, 2019 WL 4039609, at *8 (Del. Super. Ct. Aug. 27, 2019). The purpose of § 2118 "is to ensure reasonably prompt processing and payment of sums owed by insurers to their policyholders and other persons covered by their policies . . . and to prevent the financial hardship and damage to personal credit ratings that can result from the unjustifiable delays of such payments." 21 *Del. C.* § 2118B(a); *see Myers v. Travelers Commercial Ins. Co.*, 2015 WL 351953, at *1 (Del. Super. Ct. Jan. 26, 2015). Under the statute, insurers must pay or deny a claim for benefits no later than thirty days following the insurer's receipt of a written request for insurance benefits. 21 *Del. C.* § 2118B(c). If an insurer

---

[15] As previously explained at § IV.B.2, *supra*, only the Cary Practice is at issue with respect to Counterclaim Plaintiffs' § 2118 claim. Because no assignments were made to Dr. Cary individually, there can be no cause of action for failure to pay Dr. Cary in his individual capacity under § 2118.

fails to make payment or provide a written explanation for a denial of benefits within the requisite time frame, the amount of unpaid benefits due from the insurer to the claimant is increased and the claimant may seek to recover the amount due through a civil action. 21 *Del. C.* § 2118B(c)-(d).

The second amended counterclaim for violation of § 2118 alleges that State Farm "wrongfully denied every bill submitted by Counterclaim Plaintiffs without consideration of the actual injuries suffered by or treatment provided to its insureds" based on a "predetermined treatment protocol" derived from statistical patterns. (D.I. 93 at ¶¶ 166-67) State Farm argues that Counterclaim Plaintiffs' claim under the PIP statute should be dismissed because it does not specify patient names, claim numbers, details of the assignments, or billed amounts that were denied. (D.I. 101 at 18-19) Counterclaim Plaintiffs dismiss State Farm's notice arguments and note that they are addressing the same claims regarding the same patients on which State Farm bases its own causes of action. (D.I. 104 at 1) Counterclaim Plaintiffs focus on the fact that the insureds executed valid assignments authorizing Counterclaim Plaintiffs to receive payment of medical benefits, and State Farm acknowledged the validity of each patients' assignment during this process. (*Id.* at 7)

I recommend that the court grant State Farm's motion to dismiss Counterclaim Plaintiffs' claim under § 2118 because the pleading does not identify the specific injury and harm caused by State Farm's conduct. *See Spine Care Del., LLC v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 810112, at *3 (D. Del. Feb. 9, 2018). The pleading alleges that Counterclaim Plaintiffs submitted bills and medical records directly to State Farm pursuant to assignments executed by each patient. (D.I. 93 at ¶¶ 21-23) But the pleading does not identify the patients who assigned

their claims to Counterclaim Plaintiffs,[16] nor does it identify any specific claims. To state a claim under § 2118, Counterclaim Plaintiffs must specifically identify the claims wrongfully denied based on the predetermined treatment protocol as well as the resultant injury caused by State Farm. *Spine Care Del.*, 2018 WL 810112, at \*3; *see also Spine Care Del., LLC v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 1462226, at \*3 (D. Del. Mar. 23, 2018) (explaining that the medical provider must plead "the identity of the patient, the specific harm suffered by patient caused by State Farm, and the patient's assignment of rights" to the medical provider, and "tie each of State Farm's alleged unlawful practices to facts showing a patient actually suffered harm caused by the unlawful practice.").

To the extent that Counterclaim Plaintiffs allege State Farm is on notice of these facts based on the allegations in State Farm's own pleading, this is not a sufficient basis for determining whether Counterclaim Plaintiffs' pleading survives a Rule 12 motion. *See Spine Care Del.*, 2018 WL 1462226, at \*3 ("While Spine Care may be correct in arguing State Farm is aware of the patient-specific facts through discovery, we review allegations to determine whether Spine Care survives a Rule 12 motion, and those allegations control the case going forward.").

### 4. Motion to sever

Having recommended that the court grant State Farm's motion to dismiss the second amended counterclaims of Counterclaim Plaintiffs, I recommend that the court deny as moot State Farm's alternative request to sever and stay the counterclaims.

---

[16] Patients must be individually identified with specificity, and concerns about the protection of their medical privacy may be addressed by using pseudonyms. *See RAI Care Ctrs. of Md. I, LLC v. Office of Pers. Mgmt.*, 459 F. Supp. 3d 124, 129 (D.D.C. 2020).

## V.    CONCLUSION

For the foregoing reasons, I recommend that the court DENY Defendants' motions to dismiss (D.I. 112; D.I. 113), and GRANT with prejudice State Farm's motion to dismiss the second amended counterclaims of Dr. King, Dr. Cary, the King Practice, and the Cary Practice (D.I. 100).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2).  The objections and responses to the objections are limited to ten (10) pages each.  The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: May 13, 2021

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE